# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| METROPOLITAN DESIGN & DEVELOPMENT, LLC, et al., | : | Case No. 1:25-cv-38 |
| | : | |
| | : | Judge Matthew W. McFarland |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant Frankenmuth Mutual Insurance Company's Motion to Exclude the Expert Report, Opinions, and Testimony of Charles M. Miller (Doc. 19) and Motion to Exclude the Expert Report, Opinions, and Testimony of Rebekah A. Smith (Docs. 20, 23, 26). Plaintiffs filed Responses in Opposition (Docs. 31, 32), to which Defendant filed Replies in Support (Docs. 34, 35). These motions are therefore ripe for the Court's review. For the following reasons, Defendant's Motion to Exclude the Expert Report, Opinions, and Testimony of Charles M. Miller (Doc. 19) is **DENIED**, Defendant's Motion to Exclude the Expert Report, Opinions, and Testimony of Rebekah A. Smith (Docs. 20, 23, 26) is **GRANTED IN PART AND DENIED IN PART**, and Defendant's Motion for Status Conference (Doc. 36) is **DENIED**.

## BACKGROUND

This case centers on a landslide that occurred in May 2017 in the Cincinnati neighborhood of Mount Adams. (Compl., Doc. 7, ¶ 5.) At the time of the landslide, Plaintiff Metropolitan Design & Development, LLC ("MDD") was insured under a commercial liability policy with Defendant Frankenmuth Mutual Insurance Company ("Frankenmuth"). (*Id.* at ¶ 4.) MDD performed construction work in the vicinity of the landslide prior to the event, and several lawsuits alleged that MDD's negligence caused the landslide, resulting in damage to nearby properties. (*Id.* at ¶¶ 5–8.) MDD immediately notified Frankenmuth of the lawsuits and provided documentation, but Frankenmuth declined to defend MDD in these actions. (*Id.* at ¶¶ 9–10, 13.) In one of the lawsuits, the court entered an injunction ordering MDD to stabilize, repair, and pay for all damages caused by the landslide—MDD claims that it incurred significant monetary damages from its obligations under that court order. (*Id.* at ¶ 14.) The Hamilton County Court of Common Pleas and Ohio's First District Court of Appeals subsequently ruled that Frankenmuth was obligated to defend and indemnify MDD in its lawsuits related to the landslide. (*Id.* at ¶¶ 16–17.)

Plaintiffs MDD, Matthew Fenik, Brian Folke, and Brad Franz filed the instant lawsuit in the Hamilton County Court of Common Pleas on December 27, 2024, and Defendant Frankenmuth removed the action to this Court on January 30, 2025. (Notice of Removal, Doc. 1.) Plaintiffs allege that, in failing to defend MDD in the prior landslide lawsuits, Frankenmuth breached the terms and conditions of its insurance policy with MDD. (Compl., Doc. 7, Pg. ID 159.) Further, Plaintiffs allege that Frankenmuth breached

2

its statutory duties under Ohio law and engaged in bad faith in handling the prior landslide lawsuits. (*Id.* at ¶¶ 20–29.) Finally, Plaintiffs seek monetary damages for indemnification of the damages resulting from the landslide and subsequent repairs, damage to MDD's reputation in the community, all other compensatory and punitive damages to which Plaintiffs may be entitled, attorney's fees for the appellate process and the instant action, and other damages to be proven at trial. (*Id.* at ¶¶ 30–31.)

Plaintiffs now proffer two expert witnesses in support of their case: Charles Miller and Rebekah Smith. (Miller Report, Doc. 19-3; Smith Report, Doc. 26-3.) Miller is a former insurance claims adjuster and manager, as well as a lawyer practicing insurance law. (Miller Report, Doc. 19-3, ¶ 5.) Miller's report and testimony revolve around "whether [Frankenmuth] complied with the practices and standards in the insurance industry for claims handling in its handling of [MDD]'s claim." (*Id.* at ¶ 2.) Smith is a Certified Public Accountant who specializes in forensic accounting. (Smith Report, Doc. 26-3, Pg. ID 1420.) Smith's report and testimony revolve around "the damages suffered by [MDD] as the alleged result of Frankenmuth's failure to cover MDD's losses in connection with [the] landslide." (*Id.* at Pg. ID 1421.)

In October 2025, Frankenmuth moved to exclude the reports, testimony, and opinions of both Charles Miller and Rebekah Smith. (Motions, Docs. 19, 20, 23, 26.) Plaintiffs filed Responses in Opposition (Docs. 31, 32), to which Defendant filed Replies in Support (Docs. 34, 35). This matter is therefore ripe for the Court's review.

3

## LAW

The purpose of a motion in limine is to narrow evidentiary issues for trial and exclude inadmissible evidence. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560–61 (6th Cir. 2013). "Unless a party proves that the evidence is clearly inadmissible—a demanding requirement—'evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'" *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 505 F. Supp. 3d 770, 774 (S.D. Ohio 2020) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

In determining whether to admit or exclude proffered expert testimony, the Court must act as a "gatekeeper" to ensure that the expert is duly qualified to render an expert opinion, that his testimony will assist the trier of fact, and that the proffered testimony is reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993). The Supreme Court has provided a non-exhaustive list of factors that courts may consider in assessing

4

reliability: (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has faced peer review and publication; (3) whether the technique has a high known or potential rate of error; and (4) whether the technique enjoys general acceptance within the relevant scientific, technical, or other specialized community. *Id.* at 593–94; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–50 (1999). Whether the court applies a particular *Daubert* factor "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150 (citation omitted). Courts also must examine "whether the expert's reasoning or methodology can be properly applied to the facts at issue; that is, whether the opinion is relevant to the facts at issue." *L.S. v. Scarano*, No. 2:10-CV-51, 2011 U.S. Dist. LEXIS 120258, at *7 (S.D. Ohio Oct. 18, 2011).

That said, "rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Indeed, "when the court is unable to determine whether certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Jack v. Grose*, No. 2:16-CV-633, 2019 U.S. Dist. LEXIS 146133, at *3-4 (S.D. Ohio Aug. 28, 2019) (cleaned up). And, "[w]hether or not to grant a motion in limine falls within the sound discretion of the trial court." *Delay v. Rosenthal*

5

*Collins Grp., LLC*, No. 2:07-CV-568, 2012 U.S. Dist. LEXIS 166350, at \*6 (S.D. Ohio Nov. 21, 2012).

## ANALYSIS

As noted above, Frankenmuth moves to exclude the reports, testimony, and opinions of both Charles Miller and Rebekah Smith. (*See* Motion to Exclude Miller Report, Opinions, and Testimony, Doc. 19; Motion to Exclude Smith Report, Opinions, and Testimony, Docs. 20, 23, 26.) The Court addresses each of Frankenmuth's arguments in turn.

### I.     Report, Opinions, and Testimony of Charles Miller

Frankenmuth seeks to exclude the report, opinions, and testimony of Charles Miller for two reasons: (1) "Miller's opinions constitute improper legal conclusions," and (2) "Miller's opinions, report, and testimony . . . ignore relevant facts, making them unreliable." (Motion to Exclude Miller Report, Opinions, and Testimony, Doc. 19, Pg. ID 325–31.) Beginning with the first argument, Frankenmuth asserts that "Miller's report, opinions, and testimony are not just replete with references to acts and regulations forming the basis of his opinions regarding the sufficiency of Frankenmuth's handling of MDD's claim—they are entirely based on those acts and regulations." (*Id.* at Pg. ID 326.) Specifically, Frankenmuth contends that Miller's opinions and analysis offer legal conclusions based on the National Association of Insurance Commissioners' Model Unfair Claims Settlement Practices Act and Regulations, which are encoded in Ohio law and enforced through Ohio regulations. (*Id.* at Pg. ID 320; Miller Report, Doc. 19-3, ¶¶ 5–6.) In response, Plaintiffs argue that, while Miller's report and testimony rely on the Act

6

and Regulations, these legal authorities "are simply 'one of many important sources of information for insurance industry standards for the proper handling of claims,' and that they are 'often articulations of the general insurance industry standards for claims handling.'" (Response, Doc. 31, Pg. ID 3373 (quoting Miller Report, Doc. 19-2, ¶ 6).) Further, Plaintiffs assert that "Miller's opinions that Frankenmuth engaged in conduct that failed to comport with industry standards is not a legal conclusion in and of itself; it is merely ancillary to the ultimate conclusion of whether Frankenmuth acted in bad faith." (*Id.* at Pg. ID 3376–77.)

Federal Rule of Evidence 704(a) notes that "[a]n opinion is not objectionable just because it embraces an ultimate issue." But, "a witness may not testify to a legal conclusion." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014). Indeed, "an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts. Expert testimony on the law is excluded because the trial judge does not need the judgment of witnesses." *United States v. Gordon*, 493 F. App'x 617, 626–27 (6th Cir. 2012) (cleaned up). "An expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case." *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016). "However, an expert may testify to the facts supporting a legal conclusion without testifying about the ultimate legal conclusion." *Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, No. 23-11310, 2026 U.S. Dist. LEXIS 68182, at *6 (E.D. Mich. Mar. 30, 2026) (cleaned up). And, an expert's "passing reference to a legal principle or assumption in an effort to place his opinions in some sort of context" does not justify the exclusion of his report and

7

testimony where "the substance of the expert's testimony concerns ordinary practices and trade customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the insurance industry." *Travelers Indem. Co. v. Royal Oak Enters., Inc.*, No. 5:02-CV-58, 2004 U.S. Dist. LEXIS 29575, at *10 (M.D. Fla. Aug. 20, 2004).

"[I]n bad faith insurance cases such as this, an expert may testify that certain conduct was inconsistent with or failed to comport with industry standards, which is ancillary to the ultimate legal conclusion of whether Defendant actually acted in bad faith." *Cook v. Erie Ins. Co.*, No. 2:18-CV-282, 2022 U.S. Dist. LEXIS 119496, at *9 (S.D. Ohio July 6, 2022) (cleaned up); *see also Arrowood Indem. Co. v. Lubrizol Corp.*, No. 1:10-CV-2871, 2016 U.S. Dist. LEXIS 156860, at *6 (N.D. Ohio Feb. 21, 2016) ("Opining that [an insurer]'s conduct was inconsistent with or failed to comport with industry standards is ancillary to the ultimate legal conclusion that [the insurer] acted in bad faith."); *Allen v. Cam's Transp. Co.*, No. 3:22-CV-403, 2024 U.S. Dist. LEXIS 156064, at *13 (E.D. Tenn. June 24, 2024) (cleaned up) ("Courts typically allow expert testimony regarding the customs, standards, and practices in any given industry."). Miller's opinions are based on general insurance standards that mirror relevant statutes and regulations. Thus, while "Miller's opinions may verge on legal conclusions," this "does not mean his entire testimony should be excluded" — instead, Frankenmuth "can object at trial to any questions that it believes would invite an improper response." *Om Sai Ram Hosp. LLC v. Amguard Ins. Co.*, No. 6:21-CV-2999, 2023 U.S. Dist. LEXIS 158501, at *6–7 (W.D. La. July 27, 2023).

Accordingly, the Court declines to exclude Miller's report, opinions, and testimony on this basis.

Frankenmuth also argues that the Court should exclude Miller's report, testimony, and opinions due to their unreliability, as "Miller's opinions merely amount to criticisms of Frankenmuth's claims handling processes without grappling with the reality of this case and the facts in the record." (Motion to Exclude Miller Report, Opinions, and Testimony, Doc. 19, Pg. ID 331.) Frankenmuth specifically asserts that "Miller's opinions and report are exclusively based on an unwillingness to consider crucial facts involving Frankenmuth's handling of MDD's claims," providing a list of particular instances in which Miller purportedly failed to consider countervailing facts. (*Id.* at Pg. ID 321–24.) In response, Plaintiffs contend that any dispute over the facts Miller did not consider in forming his opinions should be heard at trial as issues of weight and credibility, and not before trial as an issue of admissibility. (Response, Doc. 31, Pg. ID 3378–79.)

"The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529–30; *see also* Fed. R. Evid. 702(b) (noting that expert testimony must be based on "sufficient facts or data"). "[A]n expert opinion must set forth facts and, in doing so, outline a line of reasoning arising from a logical foundation." *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (cleaned up). "Where an expert's testimony amounts to mere guess or speculation, the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not

9

be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) (cleaned up).

The Court is mindful of "Rule 702's recent amendments . . . [which] were drafted to correct some court decisions incorrectly holding 'that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." *Taylor v. Bristol-Myers Squibb Co. (In re Onglyza)*, 93 F.4th 339, 348 n.7 (6th Cir. 2024) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendments). But, Frankenmuth's argument here centers around its contention that Miller ignored countervailing facts, and because Frankenmuth does not identify omissions significant enough to render Miller's opinions unreliable, the Court declines to exclude Miller's report, opinions, and testimony on this basis. *See United States Fid. & Guar. Co. v. Ulbricht*, 576 F. Supp. 3d 850, 861 (W.D. Wash. 2021) (noting that "a factual dispute of this sort is not a proper basis for excluding [Miller's] testimony altogether," and that the defendant insurer can address any weaknesses in Miller's opinions through cross-examination and subsequent argument that Miller's testimony "should have less weight and credibility"); *see also Johnson v. BLC Lexington SNF, LLC*, 478 F. Supp. 3d 578, 590 (E.D. Ky. 2020) (noting that any issue the defendants had with an expert's opinions, which defendants argued omitted key facts and data, was better suited for cross-examination). Indeed, Frankenmuth seeks the wholesale exclusion of Miller's opinion but fails to explain why these specific omissions warrant exclusion of his testimony and report in their entirety. Accordingly, for the reasons outlined above,

10

Frankenmuth's Motion to Exclude the Expert Report, Opinions, and Testimony of Charles M. Miller (Doc. 19) is denied.

## II.     Report, Opinions, and Testimony of Rebekah Smith

Frankenmuth seeks to exclude the report, opinions, and testimony of Rebekah Smith due to relevancy and reliability concerns. (Motion to Exclude Smith Report, Opinions, and Testimony, Doc. 26, Pg. ID 1339-46.) Beginning with Frankenmuth's reliability argument, Frankenmuth asserts that "Smith's testimony is not reliable because it is speculative." (*Id.* at Pg. ID 1341.) Specifically, Frankenmuth contends that Smith's report and opinions (1) consist of "simple math," (2) were calculated using information about MDD's financials provided by Plaintiff Matthew Fenik, one of MDD's principals, that Smith failed to independently verify, (3) omit consideration of MDD's working capital during the relevant period, and (4) violate the standards of objectivity that Smith herself outlined in professional publications. (*Id.* at Pg. ID 1341–46.) Plaintiffs respond by asserting that MDD was the only source from which Smith could obtain information about its financials, and that Smith verified MDD's representations by analyzing its financial statements. (Response, Doc. 32, Pg. ID 3392 (citing Smith Report, Doc. 26-3, Pg. ID 1428).) Thus, Plaintiffs contend that Smith did not violate her own standards of objectivity. (*Id.* at Pg. ID 3398.) Plaintiffs also argue that Smith did account for MDD's working capital during the relevant period by independently conducting a historical analysis of MDD's past profit margins and working capital. (*Id.* at Pg. ID 3392, 3396–97.)

As to Frankenmuth's characterization of Smith's opinions as "simple math," the Court disagrees. Expert testimony is admissible only if "the expert's scientific, technical,

11

or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Smith's report and testimony revolve around "the damages suffered by [MDD] as the alleged result of Frankenmuth's failure to cover MDD's losses in connection with [the] landslide," requiring her to analyze a variety of different variables in MDD's financials, including lost profits. (Smith Report, Doc. 26-3, Pg. ID 1421.) Because this type of financial analysis is grounded in Smith's specialized knowledge as a forensic accountant, it qualifies as expert testimony. *See Lindsey v. Shelby Cnty. Bd. of Educ.*, No. 2:15-CV-2587, 2017 U.S. Dist. LEXIS 231602, at *11 (W.D. Tenn. Dec. 27, 2017) (noting that the calculation of damages based on numerous variables is not "a simple matter of arithmetic"); *Crouch v. John Jewell Aircraft, Inc.*, No. 3:07-CV-638, 2016 U.S. Dist. LEXIS 3528, at *46 (W.D. Ky. Jan. 12, 2016) ("Issues of economic loss and how such loss is calculated are not everyday issues for most laymen.").

Again mindful of Rule 702's recent amendments, the Court is unpersuaded by Frankenmuth's argument contesting the reliability of Smith's testimony. "[A]lthough an expert opinion is not admissible if it is speculative or mere guess work, the court should admit expert testimony if it has a reasonable basis in fact." *Hulsing Enters., LLC v. Fazio Mech. Servs.*, No. 5:21-CV-1536, 2025 U.S. Dist. LEXIS 205432, at *8–9 (N.D. Ohio Oct. 19, 2025). Frankenmuth asserts that Smith's opinions are speculative because she should have considered more than just MDD's financial representations, but Frankenmuth points to no other sources of information that she could have examined. (Motion to Exclude Smith Report, Opinions, and Testimony, Doc. 26, Pg. ID 1341–46.) This argument does not suffice to exclude Smith's testimony. *See Hulsing Enters., LLC*, 2025 U.S. Dist.

12

LEXIS 205432, at *9 (cleaned up) ("[I]n a case where an expert's opinion is offered as to the damages of lost profits, and where the damage calculation is based on data supplied by the plaintiff, together with assumptions by the expert and projections based on those assumption[s] which are all disclosed to the jury, the opposing party may challenge the assumptions and cross-examine the expert about it, but the damages calculation is nonetheless based on observable facts and data and, as such, has a reasonable factual basis."). And, as it seems Smith did in fact consider MDD's working capital during the relevant period, the Court is also unwilling to exclude her report and testimony on this basis. (Response, Doc. 32, Pg. ID 3392, 3396–97.)

Frankenmuth also points out that Smith considered damages to non-insured persons in conducting her analysis, and it argues that such considerations are "plainly irrelevant." (Motion to Exclude Smith Report, Opinions, and Testimony, Doc. 26, Pg. ID 1339–41.) Frankenmuth specifically outlines four instances of Smith's consideration of lost profits and rent suffered by non-insureds. (*See id.* at Pg. ID 1340–41.) Plaintiffs offer nothing in response to these concerns.

Expert testimony must be relevant; in other words, it must "help the trier of fact to understand the evidence or to determine a fact in issue." *Johns v. C.R. Bard (In re Davol, Inc.)*, No. 2:18-MD-2846, 2021 U.S. Dist. LEXIS 119665, at *53 (S.D. Ohio June 28, 2021) (cleaned up). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (cleaned up). Under Ohio law, only insured persons can recover for bad-faith denial of insurance coverage. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 517 (6th Cir. 2010) ("First, in order to

assert a bad faith claim, the parties must have a contractual relationship."); *Scott Fetzer Co. v. Am. Home Assurance Co.*, 2023-Ohio-3921, 173 Ohio St. 3d 256, 263 ("That a bad-faith claim can be litigated only between the parties to an insurance contract does not mean that the contract creates it."). Therefore, because Smith's opinions as to damages to non-insureds would not help the trier of fact to determine any damages amount in this case, which would exclude damages to non-insureds, Smith's opinions about damages suffered by non-insured persons and entities are irrelevant. Accordingly, Smith's report and testimony will be excluded to the extent they cover damages purportedly suffered by non-insured persons and entities.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. Defendant's Motion to Exclude the Expert Report, Opinions, and Testimony of Charles M. Miller (Doc. 19) is **DENIED**;

2. Defendant's Motion to Exclude the Expert Report, Opinions, and Testimony of Rebekah A. Smith (Docs. 20, 23, 26) is **GRANTED IN PART AND DENIED IN PART**;

3. Rebekah A. Smith's expert report, opinions, and testimony will be excluded to the extent they cover damages purportedly suffered by non-insured persons and entities; and

4. Defendant's Motion for Status Conference (Doc. 36) is **DENIED**.

**IT IS SO ORDERED.**

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND